UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

JOSEPH ROACH,                                                              Petitioner,

v.                                                          Civil Action No. 3:16-cv-300-DJH-HBB

RANDY WHITE, Warden, Kentucky State
Penitentiary,                                                           Respondent.

* * * * *

## MEMORANDUM OPINION AND ORDER

Joseph Roach petitions for a writ of habeas corpus under 28 U.S.C. § 2254.  (Docket No. 1)  The Court referred the matter to Magistrate Judge H. Brent Brennenstuhl for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  (D.N. 18)  Judge Brennenstuhl held evidentiary hearings on August 12, and October 1, 2019.  He issued Findings of Fact, Conclusions of Law, and Recommendation on January 29, 2020, recommending that the Court deny Roach's petition yet issue a certificate of appealability as to Count 4.  (*See* D.N. 38; D.N. 45; D.N. 51)  White timely objected, and following an extension of the deadline, Roach also timely objected. (D.N. 52; D.N. 58; *see* D.N. 54)  For the reasons explained below, the Court will sustain White's objection and sustain in part and overrule in part Roach's objection, deny the petition, and decline to issue a certificate of appealability.

**I.**

On January 18, 2002, Renee Robinson was found murdered in her Louisville, Kentucky apartment.  (D.N. 10-3, PageID.382–83)  She had been "choked" and "severely beaten about the head with what was believed to be a golf club."  (*Id.*, PageID.383)  Law enforcement officers arrested Roach and his cousin John Drake on January 24, 2002, charging them with murder, rape, and robbery.  (*See id.*, PageID.143–46, 383)  The same day, Roach gave a statement to the police

1

after he was read his *Miranda* rights. (*See id.*, PageID.146–66)  Roach told the officers that he was

with Drake on the evening of January 18, when they saw Robinson outside a liquor store.  (*See id.*,

PageID.153–57)  According to Roach, Robinson indicated that she wanted to purchase "dope"

from him, and Roach, Drake, and Robinson walked to Robinson's apartment, where they drank

alcohol.  (*See id.*, PageID.157–60)  Roach stated that Robinson asked Drake to leave so that she

could have sex with Roach in exchange for drugs, although Roach denied having sex with her.

(*See id.*, PageID.160–62)  Roach told the officers that Drake left Robinson's apartment, and Roach

left about ten minutes later to search for him.  (*See id.*, PageID.160–63)  Roach said that he went

to a liquor store and then returned to Robinson's apartment, where he found Drake asleep in his

vehicle.  (*See id.*, PageID.163–64)  According to Roach, Drake said that he had returned to

Robinson's apartment after Roach left and gave her a "dove"[1] in exchange for a stereo and

videotapes.  (*Id.*, PageID.164)  Roach explained that he noticed a stereo and videotapes in Drake's

car and later helped Drake "clean[] his car out."  (*Id.*, PageID.164–66)  Law enforcement officers

ultimately found several of Robinson's videotapes in Roach's possession and Robinson's VCR in

Drake's possession.  (*See id.*, PageID.383)

Drake pleaded guilty to facilitation to murder and facilitation to robbery and agreed to

testify against Roach at his trial.  (*See id.*, PageID.203–07)  In exchange for his testimony, Drake

received five years each for facilitation to murder and facilitation to robbery, to run consecutively,

and a five-year enhancement for his status as a second-degree persistent felony offender, for a total

of fifteen years.  (*Id.*, PageID.208–10)  At Roach's November 2004 trial, Drake testified that he

and Roach were smoking crack cocaine at Robinson's apartment when Roach asked Drake to leave

so that Roach could have sex with Robinson in exchange for more drugs.  (*See id.*, PageID.241,

---

[1] A "dove" is an illegal substance.  (*See* D.N. 10-3, PageID.164 (referring to a "dove" as "dope"))

382–83)  According to Drake, he left the apartment and was sleeping in his car when Roach awakened him.  (*See id.*, PageID.383)  Drake said that the two men returned to Robinson's apartment, washed her body, and "cleaned off fingerprints from her apartment."  (*Id.*)

Several pieces of evidence were disclosed to Roach's counsel during the trial.  First, the Commonwealth's DNA expert testified that, based on the information in her notes, a cigarette butt found in Robinson's apartment contained male DNA.  (*See id.*)  This fact—that the DNA was from a male—was not disclosed to Roach's counsel prior to trial because the Commonwealth turned over only the expert's report, not her notes.[2]  (*See id.*; *see also* D.N. 10-3, PageID.359–67)  Upon the expert's testimony, her notes were provided to Roach's counsel.  (*See id.*, PageID.383)  Second, test results showing that Robinson's brother's fingerprints were found in the apartment were not provided to either the Commonwealth or Roach's counsel until "the initial days of the trial."  (*Id.*, PageID.384)  Third, the Commonwealth introduced two letters that Roach wrote to Drake while they were awaiting trial.  (*See id.*, PageID.385)  Drake's counsel turned over the letters to the Commonwealth during Roach's trial, and upon receipt, the Commonwealth provided them to Roach's counsel.  (*See id.*)  His counsel requested a one-week continuance to have the notes authenticated by a handwriting expert, and the trial judge granted a four-day continuance.  (*See id.*)

A jury found Roach guilty of murder, first-degree sex abuse, and theft by unlawful taking.  (*Id.*, PageID.218–23)  Roach was sentenced to life for murder, five years for first-degree sex abuse, and twelve months for theft by unlawful taking, to run concurrently.  (*Id.*, PageID.224–26)  Roach

---

[2] According to Roach's habeas petition, the expert's notes also stated that blood on Robinson's bed matched the markers in Drake's blood.  (*See* D.N. 1, PageID.12)  This fact was not mentioned in either Roach's direct appeal or the Kentucky Supreme Court opinion denying his direct appeal.  (*See* D.N. 10-3, PageID.230–86, 382–88)  The expert's notes are not found in the record provided to the Court.

3

challenged his convictions on direct appeal, asserting that the trial court erred by (1) failing to exclude evidence or grant a continuance or mistrial after the Commonwealth belatedly turned over Roach's two letters, the DNA expert's notes, the fingerprint report, and a Commonwealth witness's lie-detector test results; (2) admitting the letters, which he argues were not properly authenticated; (3) failing to order a competency evaluation of Roach; (4) admitting Roach's statement to the police, allegedly in violation of *Miranda*; and (5) excluding portions of the same statement. (*Id.*, PageID.243–86)  The Kentucky Supreme Court rejected these claims and upheld Roach's convictions in October 2006, (*see id.*, PageID.382–88).  *Roach v. Commonwealth*, No. 2005-SC-0211-MR, 2006 WL 2986492 (Ky. Oct. 19, 2006).

## A.   State-Court Collateral Motions

In June 2007, Roach, proceeding pro se, moved the state trial court to vacate his sentence pursuant to Kentucky Rule of Criminal Procedure 11.42.  (*Id.*, PageID.390–93)  As grounds for his motion, Roach asserted that the trial court erred by denying his discovery request for Drake's mental health records and that his trial counsel was ineffective for failing to interview Drake's brother and to request mitochondrial DNA testing of "evidence collected at the crime scene."  (*Id.*, PageID.390–08)  Roach was appointed counsel in December 2007.[3]  (*Id.*, PageID.409)

Nearly four years later in March 2011, Roach, again proceeding pro se, moved to supplement his Rule 11.42 motion.  (*Id.*, PageID.411–35)  He sought to add claims that his trial counsel provided ineffective assistance by failing to (1) conduct an adequate pretrial investigation; (2) interview several witnesses in addition to Drake's brother; (3) object to a jury instruction that was not supported by the evidence; (4) request a facilitation instruction; (5) argue that the letters passed to Drake did not implicate Roach in Robinson's murder; (6) request an

---

[3] The state court appointed new counsel in January 2009.  (*See* D.N. 10-3, PageID.410)

4

accessory-after-the-fact instruction; (7) request jury instructions "in support of Roach's theory of defense"; and (8) object to an "erroneous reasonable doubt instruction." (*Id.*)  Roach also asserted that his appellate counsel was ineffective for failing to argue that (1) his trial counsel erred by not requesting a facilitation instruction; (2) he was denied a unanimous jury verdict due to a complicity instruction that was not supported by the evidence; (3) the trial court erred by not allowing requested avowal testimony from the Commonwealth's DNA expert; and (4) his trial counsel erred by not objecting to an "erroneous reasonable doubt instruction." (*Id.*)  The state trial court summarily denied Roach's Rule 11.42 motion and supplement on June 30, 2011. (*Id.*, PageID.527)

In March 2011, and while his first post-conviction motion was pending, Roach, with the assistance of counsel, moved for an evidentiary hearing pursuant to Kentucky Rule of Civil Procedure 60.02 in light of "newly discovered evidence." (*Id.*, PageID.437–48)  He asserted that Drake told three inmates—Stephen Blakemore, Joseph Sharer, and Robert Hanley—that he, and not Roach, murdered Robinson. (*See id.*)  In support of his motion, he attached affidavits from Blakemore, Sharer, and Hanley testifying as to their conversations with Drake. (*See id.*, PageID.451–63)  The state trial court denied his motion in March 2012 as time-barred. (*See id.*, PageID.701)

On March 27, 2015, the Kentucky Court of Appeals affirmed as to both motions. (*Id.*, PageID.700–21)  As to his Rule 11.42 motion, the court determined that an evidentiary hearing was unnecessary and that Roach failed to demonstrate that his trial counsel performed deficiently. (*See id.*, PageID.714–17)  It found his ineffective-assistance-of-appellate-counsel claims, which were asserted in the supplemental Rule 11.42 motion, untimely. (*See id.*, PageID.700–14)  It also concluded that Roach's Rule 60.02 motion was untimely. (*See id.*, PageID.717–21)  On October 21, 2015, the Kentucky Supreme Court declined to review the decision. (*Id.*, PageID.763)

**B.      Habeas Corpus Petition**

Roach filed a petition for habeas corpus under 28 U.S.C. § 2254 in this Court on May 19, 2016.  (D.N. 1; D.N. 5-1; *see* D.N. 8)  Roach asserts ten grounds for relief: (1) the Commonwealth withheld exculpatory evidence; (2) the trial court erred in refusing to continue the trial after the Commonwealth belatedly disclosed exculpatory evidence; (3) trial counsel rendered ineffective assistance by failing to interview Drake's brother; (4) the state court erred in failing to consider newly discovered evidence of Roach's innocence; (5) appellate counsel rendered ineffective assistance; (6) the trial court erred by admitting Roach's letters to Drake; (7) the trial court erred by failing to establish Roach's competency; (8) the trial court erroneously admitted Roach's statement to police; (9) trial counsel rendered ineffective assistance by failing to object to a witness's testimony; and (10) the Commonwealth engaged in prosecutorial misconduct.  (D.N. 1)

The Court referred the matter to Magistrate Judge H. Brent Brennenstuhl for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  (D.N. 18)  Judge Brennenstuhl conducted evidentiary hearings on August 12, and October 1, 2019, as to Count 4.  (*See* D.N. 38; D.N. 45) He issued Findings of Fact, Conclusions of Law, and Recommendation on January 29, 2020, recommending that the Court deny Roach's petition yet issue a certificate of appealability as to Count 4.  (D.N. 51)  White timely objected, and following an extension of the deadline, Roach also timely objected.  (D.N. 52; D.N. 58; *see* D.N. 54)  On July 1, 2022, this matter was reassigned to the undersigned pursuant to General Order 2022-08.  (*See* D.N. 59)

**II.**

When reviewing a report and recommendation, the Court reviews de novo "those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1)(C).  The Court may adopt without review any portion of the report to which no

objection is made.  *See Thomas v. Arn*, 474 U.S. 140, 150 (1985).  Upon review, the Court "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions."  Fed. R. Civ. P. 72(b)(3).  Accordingly, the Court will review de novo the portions of Judge Brennenstuhl's recommendation to which the parties object.  White objects on two grounds, contending that the magistrate judge erroneously applied *Brady v. Maryland*, 373 U.S. 83 (1963), in evaluating Count 1 and that a certificate of appealability should not be issued as to Count 4.  (D.N. 52)  Roach also objects on two grounds, asserting that Counts 4 and 5 were not procedurally defaulted.  (D.N. 58)

### A.

A district court "shall entertain an application for a writ of habeas corpus [o]n behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

> An application for a writ of habeas corpus . . . shall not be granted unless it appears that—
> (A) the applicant has exhausted the remedies available in the courts of the State; or
> (B)
> > (i) there is an absence of available State corrective process; or
> > (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

§ 2254(b)(1).  "An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented."  § 2254(c).  "In order to exhaust a claim, the petitioner 'must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim.'"  *Woolbright v. Crews*, 791 F.3d 628, 631 (6th Cir. 2015) (quoting *Baldwin v. Reese*, 541 U.S. 27, 29 (2004)).  "When a petitioner has failed to fairly present his claims to the

state courts and no state remedy remains, his claims are considered to be procedurally defaulted." *Id.* "If a petitioner's claims are procedurally defaulted, they may not be reviewed by a habeas court unless he can demonstrate 'cause' and 'prejudice.'" *Id.* (quoting *McMeans v. Brigano*, 228 F.3d 674, 680 (6th Cir. 2000)).

The Antiterrorism and Effective Death Penalty Act (AEDPA), which amended § 2254(d), provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

§ 2254(d). "A state court adjudication is 'contrary to' Supreme Court precedent under § 2254(d)(1) 'if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases' or 'if the state court confronts a set of facts that are materially indistinguishable from a decision [of the Supreme Court] and nevertheless arrives at a [different result].'" *Hill v. Curtin*, 792 F.3d 670, 676 (6th Cir. 2015) (en banc) (alterations in original) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003)).

"Under the 'unreasonable application' clause of § 2254(d)(1), habeas relief is available if 'the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.'" *Id.* (alteration in original) (quoting *Harris v. Haeberlin*, 526 F.3d 903, 909 (6th Cir. 2008)). A petitioner must therefore "show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law

beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). "In short, the standard for obtaining federal habeas relief is 'difficult to meet . . . because it was meant to be.'" *Hill*, 792 F.3d at 677 (alteration in original) (quoting *Burt v. Titlow*, 571 U.S. 12, 20 (2013)).

## B.

### 1.      Count 1

In Count 1, Roach asserts that the Commonwealth withheld the following evidence in violation of *Brady*: (1) the notes prepared by the Commonwealth's expert, which indicated that a cigarette butt in Robinson's apartment contained an unidentified male's DNA and that blood on Robinson's bed potentially matched markers in Drake's blood; (2) a report showing that fingerprints found in the apartment belonged to Robinson's brother; (3) Roach's letters to Drake; and (4) polygraph examination results for a witness who testified for the Commonwealth. (D.N. 1, PageID.10–19)  Judge Brennenstuhl noted that this claim was presented to the state court and determined that a *Brady* violation occurs when previously withheld evidence is disclosed at trial and the defendant is prejudiced by the delayed disclosure. (D.N. 51, PageID.982 (citing *United States v. Garner*, 507 F.3d 399, 405 (6th Cir. 2007)))  He concluded that the Commonwealth did not violate *Brady*, however, because Roach could not show prejudice, as required under *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999). (D.N. 51, PageID.982–88)  Although White agrees with Judge Brennenstuhl's recommendation to deny Roach's habeas petition on Count 1, he objects to the application of *Brady* to situations in which previously withheld evidence is disclosed during trial. (D.N. 52, PageID.1013–14)

Judge Brennenstuhl applied de novo review to Count 1, rather than the more deferential standard set out in § 2254(d), determining that the state court did not address Roach's *Brady* claim

on the merits because it "decided the issue solely on state law grounds." (D.N. 51, PageID.983) But "[w]hen a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits," although "that presumption can in some limited circumstances be rebutted." *Johnson v. Williams,* 568 U.S. 289, 298–301 (2013) (citing *Harrington*, 562 U.S. at 99–100); *see Stermer v. Warren*, 959 F.3d 704, 722 (6th Cir. 2020) ("[U]nless there is good reason for a federal court to think a state court's decision was *not* on the merits, the federal court must assume that it was on the merits and apply § 2254(d)."). This rule applies where, as here, the state court "confined its analysis to state-law authorities." *Jackson v. Smith*, 745 F.3d 206, 210 (6th Cir. 2014) (quoting *Brown v. Bobby*, 656 F.3d 325, 329 (6th Cir. 2011)); *cf. Gumm v. Mitchell*, 775 F.3d 345, 362 (6th Cir. 2014) (applying de novo review where the state court decided the petitioner's *Brady* claim on state procedural grounds by concluding that it did not have jurisdiction to entertain the claim). Roach has not attempted to rebut this presumption, and he therefore must satisfy the more stringent AEDPA standard of review by showing that "the state court's decision 'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" *Jackson*, 745 F.3d at 210 (quoting § 2254(d)(1)).

Roach cites Sixth Circuit precedent to support his argument that *Brady* applies to delayed disclosures of exculpatory evidence. (*See* D.N. 14, PageID.776–80 (citing *United States v. Garner*, 507 F.3d 399 (6th Cir. 2007); *Sawyer v. Hofbauer*, 299 F.3d 605 (6th Cir. 2002))) But "circuit [court] precedent does not constitute 'clearly established Federal law'" under § 2254(d)(1), *Parker v. Matthews*, 567 U.S. 37, 48 (2012), and Roach has not pointed to, nor is this Court aware of, any case in which the Supreme Court found a *Brady* violation where evidence was disclosed

*during* trial. *See United States v. Agurs*, 427 U.S. 97, 103 (1976) (noting that *Brady* applies to "the discovery, after trial, of information which had been known to the prosecution but unknown to the defense"). Roach has therefore failed to show that the state-court decision was contrary to, or an unreasonable application of "clearly established federal law," and the Court will sustain White's objection and deny Roach's petition as to Count 1. *Hill*, 792 F.3d at 676 (citing *Parker*, 567 U.S. at 48).

## 2.    Count 4

Roach asserts in Count 4 that the state court contravened or unreasonably applied clearly established federal law in failing to consider three affidavits from inmates Stephen Blakemore, Joseph Sharer, and Robert Hanley, who testified that that Drake told them on separate occasions that he alone murdered Robinson.[4]  (D.N. 1, PageID.22–25; *see* D.N. 10-3, PageID.451–63)  In March 2011, more than four years after his conviction became final,[5] Roach moved the state court for an evidentiary hearing pursuant to Kentucky Rule of Civil Procedure 60.02(e) and (f) in light of "newly discovered evidence"—that is, the three affidavits.[6]  (D.N. 10-3, PageID.382, 437–48)

---

[4] The state-court record shows that Hugh Drake, John Drake's brother, testified in an affidavit that he was with John the night of the murder until John left to "get some more money" so the two men could buy more drugs. (D.N. 10-3, PageID.637)  According to Hugh, Roach arrived five minutes after John left, and Hugh and Roach waited for John "for about an hour" until Roach left to search for John.  (*Id.*)  The affidavit also contains several incriminating statements that John made to Hugh while John was incarcerated.  (*Id.*)  This affidavit was purportedly included with Roach's initial and supplemental Rule 11.42 motions.  (*See id.*, PageID.402, 632 n.5)  Roach briefly mentions Hugh's affidavit in his discussion of Count 4, seemingly to bolster the credibility of the inmate affidavits.  (*See* D.N. 1, PageID.24)  Roach does not, however, assert that Hugh's affidavit constitutes newly discovered evidence.  (*See id.*, PageID.20–22)

[5] Under Kentucky law, "a judgment becomes final with 'the conclusive judgment in the case, whether it be the final judgment of the appellate court on direct appeal or the judgment of the trial court in the event no direct appeal was taken.'"  *Bush v. Commonwealth*, 236 S.W.3d 621, 622 (Ky. Ct. App. 2007) (quoting *Palmer v. Commonwealth*, 3 S.W.3d 763, 765 (Ky. App. 1999)).  Roach's conviction became final when the Kentucky Supreme Court denied his direct appeal in October 2006.  (*See* D.N. 10-3, PageID.382)

[6] Rule 60.02 grants relief from a final judgment "on the following grounds:"

The state trial court denied Roach's motion in March 2012, and the Kentucky Court of Appeals affirmed.  (*See id.*, PageID.701)   Applying Rule 60.02(b), which covers "newly discovered evidence" and has a one-year statute of limitations, the Kentucky Court of Appeals found Roach's motion untimely and therefore refused to address the merits of his claim or to conduct an evidentiary hearing (*see id.*, PageID.717–21).  *See* Ky. R. Civ. P. 60.02.  The Kentucky Supreme Court declined to review the decision.  (*Id.*, PageID.763)

Roach asserts in Count 4 that the state court's refusal to consider the affidavits of Sharer, Blakemore, and Hanley contradicted or was an unreasonable application of Supreme Court authority.  (D.N. 1, PageID.24–25)  Judge Brennenstuhl conducted two evidentiary hearings, at which Sharer and Blakemore[7] testified that John Drake told them that he implicated Roach because he "felt he had no [other] choice" and that he, not Roach, murdered Robinson.  (D.N. 41, PageID.887; *see* D.N. 43)  Although Judge Brennenstuhl found the testimonies of Sharer and Blakemore "generally credible," he concluded that Roach's claim was procedurally defaulted. (D.N. 51, PageID.992–99)  Nevertheless, he recommended issuing a certificate of appealability on Count 4.  (*Id.*, PageID.998–99)  Roach objects to Judge Brennenstuhl's recommendation as to procedural default, and White objects as to the certificate of appealability.  (*See* D.N. 52, PageID.1014–16; D.N. 58, PageID.1033–38)

---

(a) mistake, inadvertence, surprise or excusable neglect; (b) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59.02; (c) perjury or falsified evidence; (d) fraud affecting the proceedings, other than perjury or falsified evidence; (e) the judgment is void, or has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (f) any other reason of an extraordinary nature justifying relief.

Ky. R. Civ. P. 60.02; *see* Ky. R. Crim. P. 13.04.

[7] Hanley did not testify at either hearing.

12

### a.      Roach's Objection

A habeas petitioner "must first exhaust his state remedies and 'meet the State's procedural requirements for presenting his federal claims.'"  *Smith v. Warden*, 780 F. App'x 208, 218 (6th Cir. 2019) (quoting *Coleman v. Thompson*, 501 U.S. 722, 729–32 (1991)).  A petitioner's claim is procedurally defaulted where "there is a state procedural rule that is applicable to the petitioner's claim"; "the petitioner failed to comply with the rule"; "the state courts actually enforced the state procedural sanction"; and "the state procedural forfeiture is an 'adequate and independent' state ground on which the state can rely to foreclose review of a federal constitutional claim." *McNeill v. Bagley*, 10 F.4th 588, 595 (6th Cir. 2021) (quoting *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986)) (internal quotation marks omitted).

White contends that the one-year statute of limitations set out in Rule 60.02(b) constitutes an independent and adequate state-law ground that precludes relief on Roach's newly-discovered-evidence claim.  (*See* D.N. 10, PageID.102; *see also* D.N. 10-3, PageID.717–21)  Roach asserts that Kentucky courts do not regularly apply Rule 60.02(b) to claims of newly discovered evidence when such claims would be untimely, and that his claim thus is not procedurally defaulted.  (*See* D.N. 50, PageID.963)  He alternatively argues that the miscarriage-of-justice exception outlined in *Schlup v. Delo*, 513 U.S. 298 (1995), excuses his procedural default.  (*See* D.N. 50, PageID.966–67)  Nevertheless, because "resolution of the procedural issues is not necessary" to the disposition of Count 4, the Court will proceed to the merits.  *Smith v. Nagy*, 962 F.3d 192, 207 (6th Cir. 2020).

As discussed above, Roach asserts in Count 4 that the state court contravened or unreasonably applied clearly established Supreme Court precedent by failing to adequately consider the affidavits of Sharer, Blakemore, and Hanley.  (D.N. 1, PageID.24–25)  Notably, he

does not argue in Count 4 that his conviction rested on insufficient evidence, nor could he, as "a reviewing court evaluating a sufficiency-of-the-evidence claim cannot consider newly discovered evidence." *Smith*, 962 F.3d at 206 (construing the petitioner's claim as one of "actual innocence" where he argued that the state court erred in failing to consider an affidavit that cast doubt on two witnesses' testimonies at his trial). The Court therefore understands Roach to be arguing that he "is entitled to habeas relief because newly discovered evidence shows that [his] conviction is factually incorrect." *Id.* (quoting *Herrera v. Collins*, 506 U.S. 390, 404 (1993)).

While a habeas petitioner may assert his actual innocence as a "gateway" to have an otherwise procedurally barred claim considered on the merits, *see House v. Bell*, 547 U.S. 518, 53637 (2006) (citing *Schlup*, 513 U.S. at 327), the Sixth Circuit has "repeatedly indicated" that freestanding actual-innocence claims "are not cognizable on habeas." *Smith*, 192 F.3d at 207 (quoting *Cress v. Palmer*, 484 F.3d 844, 854 (6th Cir. 2007)) (internal quotation marks omitted). Moreover, even if such claims were cognizable, "the petitioner's burden 'would necessarily be extraordinarily high,'" and Roach has not met that burden here. *Id.* (quoting *Herrera*, 506 U.S. at 417). In *Smith*, the Sixth Circuit rejected an actual-innocence claim, determining that an affidavit that "seriously undermine[d]" two witnesses' testimonies nonetheless fell short of "affirmatively proving" the petitioner's innocence. *Id.* Likewise, while the affidavits of Sharer, Blakemore, and Hanley and the testimonies of Sharer and Blakemore give the Court "reason to doubt" John Drake's testimony at Roach's trial, they do not "preclude any possibility" of Roach's guilt. *Id.* (quoting *Carriger v. Stewart*, 132 F.3d 463, 477 (9th Cir. 1997) (en banc)) (internal quotation marks omitted). Thus, the Court cannot grant Roach habeas relief on Count 4. *See id.* at 207–08.

b.       White's objection

White objects to the magistrate judge's recommendation that the Court issue a certificate of appealability as to the denial of Count 4.  (*See* D.N. 52)  A certificate of appealability "may be issued 'only if the applicant has made a substantial showing of the denial of a constitutional right.'" *Kissner v. Palmer*, 826 F.3d 898, 901 (6th Cir. 2016) (quoting 28 U.S.C. § 2253(c)(2)).   A petitioner must therefore show "that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).   In other words, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* at 338 (quoting *Slack*, 529 U.S. at 484) (internal quotation marks omitted).   Roach has failed to make this showing for the reasons explained above, *see Smith*, 192 F.3d at 206–07, and the Court will therefore deny a certificate of appealability on Count 4.  *See Miller-El*, 537 U.S. at 338.

3.       Count 5

Roach asserts in Count 5 that his appellate counsel rendered ineffective assistance by failing to argue that (1) Roach's murder and sexual-abuse charges were supported by insufficient evidence; (2) the complicity jury instruction was supported by insufficient evidence; and (3) the trial court erred by refusing to allow avowal testimony by the Commonwealth's DNA expert. (D.N. 1, PageID.25–30)  Judge Brennenstuhl recommended denying Roach's petition on these grounds, determining that the claims of ineffective assistance of appellate counsel (IAAC) were procedurally barred.  (D.N. 51, PageID.999–1001)  Roach objects to this conclusion.  (D.N. 58, PageID.1038–39)

Roach's convictions became final in October 2006 when the Kentucky Supreme Court denied his direct appeal (*see* D.N. 10-3, PageID.382). *See Bush*, 236 S.W.3d at 622 (quoting *Palmer*, 3 S.W.3d at 765). In June 2007, Roach, proceeding pro se, asked the trial court to vacate his sentence pursuant to Kentucky Rule of Criminal Procedure 11.42. (D.N. 10-3, PageID.390–93) On November 18, 2010, and while Roach's Rule 11.42 motion was pending in state trial court, the Kentucky Supreme Court decided *Hollon v. Commonwealth*, 334 S.W.3d 431 (Ky. 2010). *Hollon* overruled *Hicks v. Commonwealth*, 825 S.W.2d 280 (Ky. 1992), and for the first time permitted petitioners to bring all IAAC claims in Rule 11.42 motions. *See Hollon*, 334 S.W.3d at 434. The court, however, gave its holding in *Hollon* "prospective effect only." *Id.* at 439.

In March 2011, Roach, again proceeding pro se, moved to supplement his Rule 11.42 motion by adding IAAC claims. (*See* D.N. 10-3, PageID.411–35) The Kentucky Court of Appeals found his supplemental Rule 11.42 motion untimely, noting that a petitioner has three years after a conviction becomes final to move under Rule 11.42 to vacate the conviction. (D.N. 10-3, PageID.705–14) The court rejected Roach's argument that the supplemental motion, which was filed more than four years after his conviction became final, related back to his original Rule 11.42 motion. (*Id.*) Further, the court refused to apply *Hollon* to the supplemental motion, determining that *Hollon* applies only to IAAC claims "raised in the trial court before *Hollon* was rendered" or to claims "raised post-*Hollon*" in a timely Rule 11.42 motion. (D.N. 10-3, PageID.712)

White argues that this reasoning constitutes a procedural bar to this Court's consideration of Roach's IAAC claims. (*See* D.N. 10, PageID.108–09; D.N. 47, PageID.949–50) Roach seeks to overcome his procedural default by arguing that the statute of limitations imposed by the Kentucky Court of Appeals is not regularly followed. (D.N. 50, PageID.963–66) He also contends

that the *Schlup* actual-innocence exception excuses his procedural default.  (D.N. 50, PageID.966–70)

       **a.**      **Procedural Default**

As previously explained, a petitioner's claim is procedurally barred where "there is a state procedural rule that is applicable to the petitioner's claim"; "the petitioner failed to comply with the rule"; "the state courts actually enforced the state procedural sanction"; and "the state procedural forfeiture is an 'adequate and independent' state ground on which the state can rely to foreclose review of a federal constitutional claim." *McNeill*, 10 F.4th at 595.  "So long as the state procedural rule is one that is an independent and adequate ground for refusing to fully consider the petitioner's argument, the federal courts likewise will not hear the petitioner's claim." *Pollini v. Robey*, 981 F.3d 486, 498 (6th Cir. 2020) (citing *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006)).

Here, however, Roach "did not fail to comply with state procedural rules." *Id.*  At the time Roach sought state collateral review, the Kentucky Supreme Court "refused to recognize" Rule 11.42 as a vehicle for IAAC claims and provided no other avenue for such claims. *Id.* at 499.  It therefore "voluntarily forwent the opportunity to have a first pass at remedying violations of a state prisoner's federal rights." *Id.* (citing *Coleman*, 501 U.S. at 730).  Simply put, "a Kentucky prisoner does not default his ineffective assistance of appellate counsel claims when binding state precedent barred him from" bringing such claims in any collateral proceeding. *Id.* (citing *Halvorsen v. White*, 746 F. App'x 489 (6th Cir. 2018); *Matthews v. Parker*, 651 F.3d 489 (6th Cir. 2011), *rev'd on other grounds*, 567 U.S. 37 (2012)).  Accordingly, Roach's IAAC claims are not procedurally defaulted, and his objection to the magistrate judge's conclusion will be sustained. *See id.*  As explained below, however, Count 5 ultimately fails on the merits.

####    b.      Merits

The Court will review Roach's IAAC claims de novo because the state court did not adjudicate them on the merits. *See Stermer*, 969 F.3d at 721 (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)). "To establish ineffective assistance of appellate counsel, a petitioner must show that his appellate counsel's failure to raise a claim was objectively unreasonable and that he was prejudiced as a result." *Hand v. Houk*, 871 F.3d 390, 416 (6th Cir. 2017) (citing *Strickland v. Washington*, 466 U.S. 668, 690 (1984)). "A petitioner can demonstrate that his appellate counsel's performance was objectively unreasonable where the unraised claim[s] w[ere] 'clearly stronger' than those presented." *Id.* (quoting *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002)). The petitioner must also establish prejudice, meaning that there is "a reasonable probability that, but for his counsel's unreasonable failure to" raise the claims on appeal, "he would have prevailed." *Thompson v. Warden*, 598 F.3d 281, 285 (6th Cir. 2010) (quoting *Webb v. Mitchell*, 586 F.3d 383, 399 (6th Cir.2009)) (internal quotation marks omitted).

Roach asserts that his appellate counsel was ineffective for failing to argue that (1) his murder and sexual-abuse charges were supported by insufficient evidence; (2) the complicity jury instruction was supported by insufficient evidence, which resulted in a non-unanimous verdict; and (3) the trial court erred by refusing to allow avowal testimony by the Commonwealth's DNA expert. (*See* D.N. 1, PageID.25–30) Roach contends that these claims were clearly stronger than the five claims his counsel pursued on direct appeal: that the trial court erred by (1) failing to exclude evidence or grant a continuance or mistrial after the Commonwealth belatedly turned over several pieces of evidence; (2) admitting Roach's letters to Drake; (3) failing to order a competency evaluation of Roach; (4) admitting Roach's statement to the police, in violation of *Miranda*; and (5) excluding portions of the same statement. (*See* D.N. 10-3, PageID.243–86; D.N. 14,

18

PageID.788–89)   Roach does not explain, however, how the claims presented here are "clearly stronger" than the five claims his appellate counsel did raise.  *Kissner*, 826 F.3d at 904.  Moreover, as discussed below, Roach's IAAC claims cannot succeed because he has not shown that prejudice resulted from his counsel's failure to raise the three underlying claims on direct appeal.  *See Thompson*, 598 F.3d at 285.

### 1.    Insufficient Evidence

Roach argues that his appellate counsel rendered ineffective assistance by failing to assert that the Commonwealth presented insufficient evidence to support his convictions for murder and sexual abuse.  (D.N. 14, PageID.788; *see* D.N. 1, PageID.25)  At trial, John Drake testified that he and Roach were smoking crack cocaine at the victim's apartment when Roach asked Drake to leave.  (*See* D.N. 10-3, PageID.382–83)  According to Drake, he left and was sleeping in his car when Roach awakened him.  (*See id.*, PageID.383)  Drake stated that the two men then returned to Robinson's apartment, washed her body, and "cleaned off fingerprints from her apartment."  (*Id.*; *see id.*, PageID.186–94)  Additionally, inmate Larry Lapiano testified that Roach made inculpatory statements to him about the crimes while they were incarcerated, including that Roach admitted to murdering Robinson.  (*See* D.N. 1, PageID.25)

Even assuming that the insufficiency-of-the-evidence claim was preserved for review on direct appeal, *see Jackson v. Commonwealth*, 487 S.W.3d 921, 926 (Ky. 2016), and drawing "all fair and reasonable inferences from the evidence in favor of the Commonwealth," the evidence presented at Roach's trial was "sufficient to induce a reasonable juror to believe beyond a reasonable doubt" that he was guilty of murder and sexual abuse.  *Ray v. Commonwealth*, 611 S.W.3d 250, 265 (Ky. 2020) (quoting *Commonwealth v. Benham*, 816 S.W.2d 186, 187 (Ky. 1991)) (internal quotation marks omitted).  Despite Roach's characterization of Drake and Lapiano

19

as "inherently unreliable witnesses" (D.N. 1, PageID.25), witness credibility is an issue for the jury. *See Goncalves v. Commonwealth*, 404 S.W.3d 180, 205–06 (Ky. 2013) (rejecting appellant's argument that the inherent unreliability of the witnesses' testimonies justified a directed verdict in his favor); *see also Gray v. Commonwealth*, 203 S.W.3d 679, 692 (Ky. 2006) (determining that inconsistencies in the testimonies of the Commonwealth's witnesses did not entitle the defendant to a directed verdict when testimonies were properly introduced).

Because Roach cannot show that he would have prevailed on his insufficiency-of-the-evidence claim, he cannot show prejudice. *See Goncalves*, 404 S.W.3d at 205–06; *Crumes v. Commonwealth*, No. 2012-SC-000774-MR, 2013 WL 6730044, at *2–3 (Ky. Dec. 19, 2013) (rejecting appellant's claim that the evidence was insufficient to support his convictions where the Commonwealth presented only testimony from a co-defendant); *Hodge v. Commonwealth*, 17 S.W.3d 824, 841 (Ky. 2000) ("A conviction can be sufficiently supported even by the uncorroborated testimony of an accomplice."); *Calloway v. Commonwealth*, No. 2014-CA-002019-MR, 2017 WL 65610, at *4 (Ky. Ct. App. Jan. 6, 2017) ("The testimony of even a single witness is sufficient to support a finding of guilt, even when other witnesses testified to the contrary if, after consideration of all of the evidence, the finder of fact assigns greater weight to that evidence." (quoting *Commonwealth v. Suttles*, 80 S.W.3d 424, 426 (Ky. 2002)) (internal quotation marks omitted)). His first IAAC claim therefore fails. *See Hand*, 871 F.3d at 416.

### 2.    Jury Instruction

Roach also asserts that his appellate counsel performed ineffectively by failing to argue that the complicity jury instruction given at Roach's trial was unsupported by the evidence. (*See* D.N. 1, PageID.26–28)  Roach contends that Drake admitted only to helping Roach clean up the scene after the crimes but did not admit direct involvement in Robinson's murder. (*See id.*,

PageID.28)   Because Drake never testified that he was complicit in the murder and the Commonwealth presented no other evidence supporting complicity, Roach argues, a complicity instruction was insufficiently supported.  (*See id.*)  Therefore, Roach maintains that he was denied a unanimous verdict due to the "combination principal-complicity murder instruction" given at his trial.[8]  (D.N. 50, PageID.972)

As an initial matter, the Court notes that the Kentucky Constitution's unanimous-verdict requirement does not mean that a jury must "concur in a *single* view of the transaction disclosed by the evidence."  *See Beaumont v. Commonwealth*, 295 S.W.3d 60, 72 (Ky. 2009).  Rather, the Commonwealth's different theories of an offense—here, murder—must be sufficiently supported by the trial evidence.  *See id.*  Thus, the issue is whether the Commonwealth presented sufficient evidence for the jury to find that Roach murdered Robinson as an accomplice and a principal.  *See id.*

As previously explained, given the testimonies of Drake and Lapiano (*see* D.N. 1, PageID.25; D.N. 10-3, PageID.243, 383), the Commonwealth presented sufficient evidence that Roach acted as the principal in Robinson's murder.  *See Beaumont*, 295 S.W.3d at 72–73 (affirming murder conviction under the theory that appellant acted as the principal where his co-defendant testified that appellant shot the victim); *Hodge*, 17 S.W.3d at 841.  As to accomplice

---

[8] The murder instruction at Roach's trial stated:

You will find the defendant, JOSEPH W. ROACH, guilty of Murder, under this Instruction if, and only if, you believe from the evidence beyond a reasonable doubt, all of the following:

A. That in this county on or about January 18, 2002, acting alone or in complicity with another, he killed Renee Robinson by beating her with a blunt object and/or strangling her; AND

B. That in so doing; (1) He caused the death of Renee Robinson intentionally.  OR (2) He was wantonly engaging in conduct which created a grave risk of death to another and thereby caused the death of Renee Robinson under circumstances manifesting extreme indifference to human life.

(D.N. 29-2, PageID.854)

liability, the Commonwealth must show that the defendant either (1) "*specifically intended* to promote or facilitate the commission of th[e] offense" or (2) "without the intent that the principal's act cause the criminal result," nonetheless had "a state of mind which equates with 'the kind of culpability with respect to the result that is sufficient for the commission of the offense.'" *Beaumont*, 295 S.W.3d at 68–70 (quoting *Tharp v. Commonwealth*, 40 S.W.3d 356, 360 (Ky. 2000)); *see* Ky. Rev. Stat. § 502.020.

The Commonwealth presented sufficient evidence at Roach's trial to support a complicity jury instruction.  First, the Commonwealth demonstrated that Roach admitted to police that both he and Drake were in Robinson's apartment before the murder.  (*See* D.N. 10-3, PageID.146–66)  Second, the Commonwealth showed that Roach and Drake possessed some of Robinson's personal items after the murder.  (*See id.*, PageID.164, 383)  Third, the Commonwealth submitted two notes that Roach wrote to Drake while they were each incarcerated awaiting trial.  (*See* D.N. 1, PageID.14–15)  In these notes, Roach admitted to stealing an item from Robinson's apartment after her death.  (*Id.*, PageID.15)  The notes also contained a timeline of the night of the murder.[9] (*See* D.N. 10-3, PageID.241)

"Drawing all fair and reasonable inferences from the evidence in favor of the Commonwealth," this evidence sufficiently supported a complicity jury instruction, and Roach was therefore not denied a unanimous verdict.  *Beaumont*, 295 S.W.3d at 69–71; *Pate v. Commonwealth*, 243 S.W.3d 327, 335 (Ky. 2007) (finding complicity instruction proper where some evidence pointed to complicity and noting that the jury was not required to believe co-defendant's testimony that the appellant acted on his own); *cf. Bowling v. Commonwealth*, No.

---

[9] The notes are not in the record.  The Court presumes that the content of the notes is accurately reflected in the habeas petition and Roach's direct appeal.  (*See* D.N. 1, PageID.14–15; D.N. 10-3, PageID.241)

2006-SC-000167-MR, 2007 WL 1159621, at *3–6 (Ky. Apr. 19, 2007) (finding complicity instruction erroneous where the Commonwealth presented evidence only that the defendant helped dispose of the victim's body after the murder and no evidence that the defendant was with the victim before or at the time of his death).  Accordingly, Roach cannot demonstrate prejudice, and his second IAAC claim fails.  *See Hand*, 871 F.3d at 416.

### 3.    Avowal Testimony

Finally, Roach asserts that his appellate counsel was ineffective for failing to argue that the trial court erred in refusing to allow avowal testimony from the Commonwealth's DNA expert. (D.N. 1, PageID.28–30)  At Roach's trial, one of the Commonwealth's experts, Dawn Katz, testified that the crime-scene samples she tested were an "inconclusive" match for Roach's DNA. (*Id.*, PageID.28–29)  Roach's trial counsel sought to present on cross-examination the defense's own expert's test results, which found no match for Roach's DNA, and to ask Katz whether these results "would have changed her opinion."  (*Id.*, PageID.29; *see* D.N. 10-3, PageID.430)  The trial court permitted counsel to place the question, but not Katz's answer, in the record by avowal.  (*See* D.N. 1, PageID.29–30; D.N. 10-3, PageID.430–31)  Trial counsel declined to do so.  (*See* D.N. 10-3, PageID.430)  Roach argues that trial counsel's inability to place Katz's answer in the record by avowal precluded the Kentucky Supreme Court from reviewing whether the exclusion of the requested cross-examination violated the Confrontation Clause.  (D.N. 1, PageID.29–30)

A Confrontation Clause violation occurs where "[a] reasonable jury might have received a significantly different impression of [the witness]'s credibility had [the defendant]'s counsel been permitted to pursue his proposed line of cross-examination."  *Richardson v. Commonwealth*, No. 2019-SC-000438-MR, 2020 WL 2831929, at *8 (Ky. May 28, 2020) (alterations in original) (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 680 (1986)) (internal quotation marks omitted).

Roach has not attempted to make this showing, nor could he: two expert witnesses testified immediately after Katz that Roach was not a contributor to the DNA found in Robinson's apartment.  (*See* D.N. 10, PageID.113; D.N. 10-3, PageID.430, 618)  There is thus "no 'reasonable possibility that exclusion of the evidence complained of might have contributed to the conviction.'"  *Commonwealth v. Armstrong*, 556 S.W.3d 595, 604 (Ky. 2018) (quoting *Talbott v. Commonwealth*, 968 S.W.2d 76, 84 (Ky. 1998)); *see Goncalves*, 404 S.W.3d at 203 ("[T]here is no constitutional guarantee to engage in cross-examination in whatever manner and extent that the defense so desires. . . . '[S]o long as a reasonably complete picture of the witness's veracity, bias and motivation is developed, the judge enjoys power and discretion to set appropriate boundaries.'" (quoting *Davenport v. Commonwealth*, 177 S.W.3d 763, 768 (Ky. 2005))).  Therefore, even assuming the trial court had properly preserved the requested avoual testimony, the exclusion of the cross-examination testimony would have constituted harmless error.  *See Armstrong*, 556 S.W.3d at 604.  Accordingly, Roach cannot show prejudice, and his third IAAC claim fails.  *See Hand*, 871 F.3d at 416.

## III.

Roach has not demonstrated that he is entitled to habeas relief.  As to Count 1, he has failed to show that the state court unreasonably applied *Brady* to the delayed disclosure of exculpatory evidence.  *See* § 2254(d).  Further, even assuming Roach's claim in Count 4 was not procedurally defaulted, he has not established that he is entitled to relief on the merits or that a certificate of appealability is warranted.  *See Miller-El*, 537 U.S. at 338; *Smith*, 192 F.3d at 207–08.  And as to Count 5, although Roach's claim is not procedurally defaulted, he has not demonstrated that his appellate counsel provided ineffective assistance.  *See Hand*, 871 F.3d at 416.  Accordingly, and the Court being otherwise sufficiently advised, it is hereby

24

**ORDERED** as follows:

(1)     The Findings of Fact, Conclusions of Law, and Recommendation of Magistrate Judge H. Brent Brennenstuhl (D.N. 51) are **ADOPTED** and **INCORPORATED** herein as to Counts 2, 3, 6, 7, 8, 9, and 10.

(2)     White's objection to the magistrate judge's recommendation (D.N. 52) is **SUSTAINED**.  No certificate of appealability will issue with  respect to any  claim raised in this proceeding.

(3)     Roach's objection to the magistrate judge's recommendation (D.N. 58) is **SUSTAINED** in part and **OVERRULED** in part.  His objection is **SUSTAINED** as to Count 5 and **OVERRULED** as to Count 4.   While the Court sustains Roach's objection regarding procedural default as to Count 5, as discussed in Section II.B.3.a., the claim fails on the merits.

(4)     A separate judgment will be entered this date.

August 29, 2022

David J. Hale, Judge
United States District Court